RENDERED: JUNE 20, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1522-ME

T.D.                                                                    APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT,
FAMILY DIVISION
HONORABLE BRYAN D. GATEWOOD, JUDGE
ACTION NO. 20-J-503316-001

CABINET FOR HEALTH AND
FAMILY SERVICES; H.H.; J.H.; AND
M.D. (A CHILD)                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND MOYNAHAN,
JUDGES.

THOMPSON, CHIEF JUDGE: T.D. (hereinafter referred to as Mother)[1] appeals

from an order of the Jefferson Circuit Court, Family Division, which allowed H.H.

and J.H. (hereinafter collectively referred to as the Custodians) to intervene in a

---

[1] This case involves allegations of dependency and neglect against a minor child; therefore, we will not use the names of the parties involved in order to protect the child's privacy.

dependency, neglect, and abuse (DNA) action regarding Mother's child, M.D. (hereinafter referred to as Child). Mother argues that the trial court erred in allowing the Custodians to intervene. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

This case has previously been before another panel of this Court; therefore, we will utilize that panel's recitation of the facts.

> On October 30, 2020, the Cabinet for Health and Family Services ("CHFS") filed a petition alleging that Child had tested positive for controlled substances at birth and was abused or neglected. As a result, temporary custody was granted to the Custodians by order entered November 10, 2020. [Mother] ultimately stipulated to abuse or neglect and, over the following two years, made efforts toward reunification.

> In August 2022, the Custodians filed a petition for permanent custody of Child in Clark County. In response, Mother requested that the court rescind temporary custody, grant her expanded visitation, and assume exclusive jurisdiction over Child. Per the order of October 20, 2022, at the ensuing hearing the Custodians agreed to remand the Clark County action in favor of proceeding in the underlying case, and the court ordered that Mother's visitation be expanded at the discretion of CHFS.

> Thereafter, Mother filed a "Motion for Return of Custody" arguing that Child could be safely returned home. The Custodians filed a response disputing Mother's claim, as well as objections to CHFS's visitation schedule and various motions asking the court to: (1) vacate the October 20, 2022 order, (2) recuse itself, (3) permit them to intervene and grant them permanent custody, (4) remand the issue of Child's return

-2-

> to Mother, and (5) transfer the custody proceedings to Clark County.
>
> By order of January 23, 2023, the court overruled the motions to vacate its prior order and to recuse itself and, deciding to address Mother's motion for return first, passed on the remaining motions. After conducting a hearing, at which the Custodians and their counsel were permitted to attend but not participate, the Court granted Mother's motion and ordered the immediate transfer of custody to her. Thereafter, by order of February 15, 2023, all pending motions were denied as moot[.]

*H.H. v. T.D.*, No. 2023-CA-0252-ME, 2023 WL 7393053, at *1 (Ky. App. Nov. 9, 2023).

The Custodians then appealed to this Court. The Court held that because the Custodians were not parties to the DNA action, they were not permitted to file any motions in the action and could not be heard on most of their claims; however, the Court ultimately believed they should have been heard on their motion to intervene. *Id.* at *3. The Court then affirmed in part, reversed in part, and remanded for the trial court to take up the issue of intervention.

On remand, the trial court held a hearing regarding the motion to intervene on May 17, 2024. After the hearing, the court ordered that the parties brief the issue, which was done. On September 13, 2024, the trial court entered an order granting the Custodians' motion to intervene. Mother filed a motion to alter, amend, or vacate, but that motion was denied. This appeal followed.

## ANALYSIS

The Custodians moved to intervene in the DNA action pursuant to Kentucky Rules of Civil Procedure (CR) 24.01(1)(b), which states:

> Upon timely application anyone shall be permitted to intervene in an action . . . (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

We review a trial court's order regarding intervention under the clearly erroneous standard. *Hazel Enterprises, LLC v. Community Financial Services Bank*, 382 S.W.3d 65, 67 (Ky. App. 2012). Timeliness, which is a threshold issue for intervention, is reviewed for abuse of discretion. *Id.*

Mother's first argument on appeal is that the motion to intervene was not timely filed. When reviewing whether a motion to intervene is timely, we look at the following five factors:

> (1) [T]he point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

-4-

*Carter v. Smith*, 170 S.W.3d 402, 408 (Ky. App. 2004) (footnote and citations omitted). The trial court allowed the Custodians to intervene because they did so before the DNA action became final. Mother argues that the matter was already final and that the five criteria listed above weigh in favor of not allowing intervention.

To fully examine the timeliness issue, we will set forth the dates of relevant events: (1) the Custodians were awarded temporary custody on November 9, 2020; (2) the DNA case was adjudicated on February 24, 2022; (3) the court entered a disposition order on May 12, 2022; (4) on May 26, 2022, the trial court allows Mother to begin having unsupervised visits on Saturdays so long as she has transportation; (5) the Custodians file a custody action in Clark County in August of 2022; (6) on October 19, 2022, Mother files a motion to rescind the Custodians temporary custody, increase her visitation, and to have the Jefferson Family Court maintain jurisdiction over Child; (7) on October 20, 2022, the court enters an order indicating it will maintain jurisdiction over the case and the Child and allows CHFS the option of increasing Mother's visitation; (8) Mother files a motion seeking Child be returned to her custody on November 28, 2022; (9) the Custodians file their motion to intervene on December 14, 2022.

We will first address Mother's argument that the DNA action was final before the Custodians filed their motion to intervene. Mother claims the

DNA action was final because there had been a disposition and Kentucky case law states that a disposition order is the final order in a DNA case. She cites to *D.L.B. v. Commonwealth*, 605 S.W.3d 347 (Ky. App. 2020), in support of her argument. Mother is partly correct. A disposition order is the final order for purposes of appeal, *id.* at 350, but the DNA action is still ongoing. If a parent wants to appeal a finding that he or she abused or neglected a child, then the time for the appeal begins once the disposition order is entered. The court still has jurisdiction over the case in order to ensure the parent is cooperating with the Cabinet. That is what occurred here. Mother worked her case plan for two years and had multiple hearings even after the disposition order. Mother's claim that the DNA action was completed once the disposition order was entered is without merit as it applies to this case.

We now examine the timeliness as it relates to the five factors previously listed. We believe the first three factors weigh in favor of the Custodians. The Custodians first sought to start an independent action seeking permanent custody of Child in August of 2022 in Clark County. That attempt was abandoned and relocated in October of 2022 after Mother moved to rescind the Custodians' custody and the Jefferson Family Court indicated it wanted to

maintain jurisdiction over Child.[2]  Mother then files a motion requesting that Child be returned to her custody at the end of November of 2022.  The Custodians then filed their motion to intervene about two weeks later.  In summary, the Custodians moved to intervene around two months after Mother first moved to rescind their custody and two weeks after she moved to regain custody herself.

On the other hand, the fourth and fifth factors would weigh in favor of Mother, but only slightly.  Allowing third parties to intervene in her DNA action would generally prejudice her and it would seem unusual to have third parties participate in a DNA action.  We say that these two factors only slightly weigh in her favor because of Kentucky Revised Statutes (KRS) 620.100(5).  KRS 620.100(5), which applies to DNA actions, states:

> Foster parents, preadoptive parents, or relatives providing care for the child shall receive notice of, and shall have a right to be heard in, any proceeding held with respect to the child.  This subsection shall not be construed to require that a foster parent, preadoptive parent, or relative caring for the child be made a party to a proceeding solely on the basis of the notice and right to be heard.

While this statute does not require third parties to be made parties to a DNA action, "it also does not preclude them from being recognized as parties."  *G.M.A. v. Commonwealth*, 689 S.W.3d 142, 147 (Ky. App. 2024).  We note that this statute

---

[2] It is unclear based on the record before us whether the Custodians still have an independent custody action pending in Jefferson Family Court.

seemingly does not apply to the Custodians because they are designated as fictive kin, not foster parents, preadoptive parents, or relatives; however, it does illustrate that allowing third parties to participate in DNA actions is not unheard of or unusual.

While the trial court did not specifically address these five timeliness factors, even though Mother moved for additional specific findings, we believe the court's reasoning sufficiently touched on them. The trial court believed it was timely because the Custodians had filed it prior to the case being final. The court also considered Mother's rights and the best interests of Child. Based on our above analysis and the abuse of discretion standard of review, we find no error.

Mother's other argument on appeal is that the Custodians did not have sufficient interest in the DNA action to allow intervention. To prevail in a CR 24.01(1)(b) motion to intervene, the party seeking to intervene must have a "present substantial interest in the subject matter of the lawsuit, rather than an expectancy or contingent interest." *Commonwealth, Cabinet for Health and Family Services v. L.J.P.*, 316 S.W.3d 871, 875 (Ky. 2010) (internal quotation marks and citation omitted). Mother argues that the Custodians are seeking custody of Child and until they are deemed *de facto* custodians pursuant to KRS 403.270(1) or "person[s] acting as a parent" pursuant to KRS 403.822 and *Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky. 2010), they only have an expectant or

contingent interest in the DNA proceedings. Further, Mother argues that Child has been returned to her custody; therefore, the Custodians have no further interest in the proceedings at all.

Because a previous panel of this Court reversed and remanded the orders of the trial court which returned custody of Child in order for the trial court to determine whether the Custodians could intervene, we must examine the "present substantial interest" issue from the time the Custodians first filed their motion to intervene. At the time they filed their motion, the Custodians had physical custody of Child and had maintained that custody for around two years. The purpose of DNA actions is to provide for the well-being of the child and to consider that child's best interests. *G.M.A.*, 689 S.W.3d at 148; *S.R. v. J.N.*, 307 S.W.3d 631, 637 (Ky. App. 2010). We conclude that, due to them having actual custody of Child, they had a present and substantial interest in the well-being of Child and were properly allowed to intervene in the case.

## <u>CONCLUSION</u>

Based on the foregoing, we affirm the judgment of the trial court which allowed the Custodians to intervene in the DNA action.



ALL CONCUR.

BRIEF FOR APPELLANT:

Mary Rives Chauvin
Louisville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Adam Sanders
Louisville, Kentucky

BRIEF FOR APPELLEES H.H. AND
J.H.:

Justin T. Brezosky
D. Susan Martin
Louisville, Kentucky